UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ANDRES GOMEZ, on his own and on behalf
of all other individuals similarly situated,

      Plaintiff,

vs.

LOLA'S GOURMET LLC,

      Defendant.

_____/

## COMPLAINT – CLASS ACTION

Plaintiff, ANDRES GOMEZ, on his own behalf and on behalf of all others similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint against Defendant, LOLA'S GOURMET LLC, and states as follows:

### INTRODUCTION

1.    Plaintiff ANDRES GOMEZ (hereinafter "Plaintiff") is a legally blind person who requires screen-reading software to read website content using a computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision and others have no vision.

2.    Plaintiff brings this civil rights class action against LOLA'S GOURMET LLC, (hereinafter "Defendant") for its failure to design, construct, maintain, and operate its website, http://www.lolas-gourmet.com/ ("www.lolas-gourmet.com", to be fully accessible to and

1

independently usable by Plaintiff and other blind or visually-impaired people. Www.lolas-gourmet.com has several access barriers that prevent blind people from independently navigating and completing a purchase using assistive computer technology.

3.    Defendant excludes the blind from equal participation in the internet marketplace that plays a significant role for in the global economy and modern lifestyle.  Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby, and in conjunction with its physical locations, is a violation of blind persons' rights under the Americans with Disabilities Act (hereinafter "ADA").

4.    Because Defendant's website is not equally accessible to blind and visually-impaired consumers in violation of the ADA, this complaint seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to Plaintiff and the proposed Class of persons who are blind and visually impaired.  This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

5.    This Honorable Court has original jurisdiction under 28 U.S.C. § 1331 and § 343 for Plaintiff's claims arising out of federal law, 42 U.S.C. § 12182 *et seq*., based on Defendant's violations of Title III of the ADA.  See also 28 U.S.C. §§ 2201, 2202, the 2010 ADA Standards, and 28 C.F.R. § 36.201.

6.    Venue is proper in this District, pursuant to 28 U.S.C.  §1391(b)(2) and S.D. Fla. L.R. 3.1 because Defendant engages in business in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

7.    Plaintiff, ANDRES GOMEZ, is *sui juris* and at all times mentioned herein is a resident of Miami-Dade County in the state of Florida and a legally blind individual.  As a result of his legal blindness, Plaintiff is substantially limited in performing major life activities, including but not limited to accurately visualizing his surroundings and traversing obstacles and walking without assistance.  Plaintiff is therefore a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

8.    Defendant owns and operates a restaurant (hereinafter "Lola's Gourmet"), which is a place of public accommodation. Lola' Gourmet is located in South Florida.  The restaurant provide to the public important goods and services.  Defendant also provides the public the www.lolas-gourmet.com website that provides consumers with access to an array of goods and services including online ordering, promotions, event information, store locator functions, reservations and online menu browsing

9.    In order to efficiently and effectively navigate websites, Plaintiff uses a screen reader program to access the internet and read internet content using a computer.  However, despite multiple attempts to navigate www.lolas-gourmet.com, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered by Lola's Gourmet restaurant location as a result of accessibility barriers on the website, www.lolas-gourmet.com.

10.    Other similarly situated disabled persons as Plaintiff are qualified individuals with disabilities under the ADA.  Other similarly disabled persons share Plaintiff's discrimination based on the fact that they are visually disabled and require the use of various screen reader

3

programs in order to efficiently and effectively navigate Defendant's website and obtain information and access to Defendant's products, services, locations, and various other information, which should be accessible on the www.lolas-gourmet.com website.

11.    The access barriers on Defendant's www.lolas-gourmet.com website have deterred Plaintiff from visiting Lola's Gourmet restaurant location.

12.    It is Plaintiff's belief the violations detailed herein will not be corrected without court intervention, and thus, Plaintiff and the proposed Class of customers, who are blind and visually impaired will continue to suffer actual harm, and the violations threaten real and imminent injury in the near future.

13.    Defendant,  LOLA'S GOURMET LLC, is a company incorporated in Florida, with an agent designated to receive service of process at 2860 Coral Way, Miami, Florida 33145.

14.    Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  Www.lolas-gourmet.com is a service, privilege, or advantage of Defendant's stores.

15.    Defendant is subject to personal jurisdiction in this District.  Defendant has been and is committing the acts or omissions alleged herein in the Southern District of Florida that caused injury, and violated rights prescribed by the ADA, to Plaintiff and to the proposed Class of customers who are blind and visually impaired.  A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida.  Specifically, on several separate occasions, Plaintiff attempted to navigate Defendant's website, www.lolas-gourmet.com, using a screen reader program to access Defendant's information, and

the goods and services offered by and through Defendant's website, in conjunction with its physical locations.

## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

16.     The Internet has become a significant source of information, a portal, and a tool for conducting business, as well as a means for doing everyday activities such as shopping, learning, banking, etc. for sighted, blind and visually-impaired persons alike.

17.     As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence.  Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen.  This technology is known as screen-reading software.  Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

18.     For screen-reading software to function as designed, the information on a website must be capable of being rendered into meaningful text.  If the website content is not capable of being rendered into meaningful text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboards because they are unable to see the screen and thereby meaningfully manipulate a mouse.

19.     Blind and visually-impaired users of Windows computers and devices have several screen-reading software programs available to them.  Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased screen-reading software program available for Windows.

20.     Unless websites are designed to allow screen-reading software users to navigate Internet content by way of the keyboard, blind and visually-impaired persons are unable to fully, equally and independently access websites, and the information, products, and services contained therein.

21.     The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services.  See 28 C.F.R. §36.303(a), (b) and (c)(ii).

22.     Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g.*, *Gorecki v. Dave & Buster's, Inc.*, No. 2:17-cv-01138-PSG-AGR (C.D.C.A. October 10, 2017) (Gutierrez, P.) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims)("a finding of liability regarding the Website's compliance with the ADA does not require sophisticated technical expertise beyond the ability of the Court"); *Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *9. (C.D.C.A. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual

impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due process."); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Gomez v. Lego Systems, Inc.*, Case 1:17-cv-21628-CMA (S.D. Fla. July 31, 2017) (denying a motion to dismiss ADA claims alleging an inaccessible commercial website) [ECF #40];  *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33]   (S.D.N.Y.   July   21,   2017);   *Gorecki   v.   Hobby   Lobby   Stores,   Inc.*,   No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims); ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc*., No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an

inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017 (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss

an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Kronstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations…. [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief

that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a permanent injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring accessibility).

## CLASS ACTION ALLEGATIONS

23.     Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2): "all legally blind individuals in the United States who have attempted to access www.lolas-gourmet.com and as a result have been denied access to the enjoyment of goods and services offered by Defendant's locations during the relevant statutory period."

24.     Plaintiff seeks certification of the following Florida subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and, alternatively, 23(b)(3): "all legally blind individuals in Florida State

who have attempted to access www.lolas-gourmet.com and as a result have been denied access to the enjoyment of goods and services offered by Defendant, during the relevant statutory period."

25.     Excluded from the class are Defendant, any of its officers, directors or employees, the presiding judge, and members of their immediate families.

26.     There are hundreds of thousands of visually impaired persons in the State of Florida.  There are millions of people in the United States who are visually impaired.  Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

27.     This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons' access to the goods and services of www.lolas-gourmet.com and Lola's Gourmet restaurant location.  Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse menu items, make reservations, determine location information, event information, specials, promotions or order online on www.lolas-gourmet.com and by extension the goods and services offered through Defendant's website from Lola's Gourmet restaurant location.

28.     There are common questions of law and fact common to the class, including without limitation, the following:

        a.   Whether Defendant operates a "public place of accommodation" as defined by the ADA;

        b.   Whether www.lolas-gourmet.com is a "public accommodation" under the

ADA;

c. Whether www.lolas-gourmet.com, if not found to be in and of itself a place of public accommodation, contains a nexus to places of public accommodation operated by Defendant, to subject Defendant to liability under the ADA; and,

d. Whether Defendant through its website www.lolas-gourmet.com denies the independent, full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA.

29.     The claims of the named Plaintiff are typical of those of the class. The class, similar to Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA by failing to update or remove access barriers on their website, www.lolas-gourmet.com, so it can be independently accessible to the class of people who are legally blind.

30.     Plaintiff will fairly and adequately represent and protect the interests of the members of the class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

31.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

32.     Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

33.     References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FACTUAL BACKGROUND

34.     Defendant offers the commercial website, www.lolas-gourmet.com, to the public. The website offers features which should allow all consumers locate the restaurant location, determine specials, promotions and events, browse menu items, order online, and perform a variety of other functions.

35.     Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired proposed class members, access to Defendant's website, www.lolas-gourmet.com, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's locations.  Due to Defendant's failure and refusal to remove access barriers to www.lolas-gourmet.com, Plaintiff and proposed Class members have been and are still being denied equal access to Defendant's stores and the numerous goods, services, and benefits offered to the public through www.lolas-gourmet.com.

**Barriers on Www.lolas-gourmet.com Deny Plaintiff Access**

36.     Plaintiff, as a blind person, cannot use a computer without the assistance of screen-reading software.  However, Plaintiff is a proficient user of screen-reader technology to access the internet.  Plaintiff desired to peruse the goods and services offered through the website of Lola's Gourmet and to preview items he hoped to later purchase at the Defendant's local restaurant.  Additionally, he desired to obtain coupons and learn of deals and promotions as applicable to the local store.  Plaintiff has visited www.lolas-gourmet.com several times using an internet screen-reader to try to access information and services Defendant offers to the public with its www.lolas-gourmet.com website.  But due to the widespread accessibility barriers on www.lolas-gourmet.com, Plaintiff has been denied the full enjoyment of the facilities, goods, and services of www.lolas-gourmet.com, as well as to the facilities, goods, and services of Defendant's stores.

37.     While attempting to navigate www.lolas-gourmet.com, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to, the following:

    a.  *Empty Links That Contain No Text* causing the function or purpose of the link to not be presented to the user.  This can introduce confusion for keyboard and screen-reader users. Plaintiff encountered headers and menus that were not readable wish his screen-reader;

    b.  *Inaccessible Plug-ins, Scripts, and Applications.* When a web page requires that

an applet, plug-in or other application be present on the client system to interpret page content, the page must provide a link to a plug-in or applet that complies with §1194.21(a) through (l). No link is provided to a page where the plug-in can be downloaded. Inaccessible plug-ins, scripts, and other applications are used without providing an accessible alternative;

*Lack of Alternative Text* ("alt-text"), or a text equivalent.  Alt-text is invisible code embedded beneath a graphical image on a website.  Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures.  Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture.  The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics.  As a result, visually-impaired customers are unable to determine what is on the website and are being denied access to the numerous goods, services, and benefits offered to the public through Defendant's website.  Plaintiff encountered text on the Frequently Asked Questions page that was unreadable;

c.  *Linked Images Missing Alt-text*, which causes problems if an image within a link contains no text and that image does not provide alt-text.  A screen reader then has no content to present the user as to the function of the link. Several images contained no alt-text, giving Plaintiff no idea what the image was supposed to represent. Here links are unlabeled rendering benefits and services of the website inaccessible;

    d. *Headings* facilitate page navigation for users of many assistive technologies. The website did not provide semantic and visual meaning and structure to the document for the plaintiff. A first level heading should be present on nearly all pages. It should contain the most important heading on the page (generally the document title). According to Section 508 (o) of the Rehabilitation Act, should provide a method that permits users to skip repetitive navigation links. The "skip navigation" is intended to give screen readers and keyboard users the same capability of going directly to the main content that sighted mouse users take for granted. However, the defendant's website has no way to skip over repetitive lists of links which created a frustrating and inefficient web experience;

    e. *No ADA Statement*. Defendant's website does not contain any statement of its ADA policy as it applies to visually impaired patrons;

    f. *Low Contrast Errors.* The defendant's website has very low contrast errors . There is very low contrast between foreground and background colors that did not permit the plaintiff that has low vision to distinguish certain words due to the contrast. This contrast error was detected by Web Accessibility In Mind under the 1.4.3 Contrast (Minimum) (Level AA); and

    g. The defendant's website did not contain an ADA button to adjust the website format to one that is fully readable through SRS.

38.    Most recently, in May of 2018, and more than once, Plaintiff attempted to access information on www.lolas-gourmet.com.  Plaintiff again encountered barriers to access on

www.lolas-gourmet.com when it came to accessing the various information and services offered on the website.

## Defendant Must Remove Barriers To Its Website

39.     Due to the inaccessibility of www.lolas-gourmet.com, blind and visually-impaired customers such as Plaintiff and the proposed class members, who need screen-readers to access the internet, cannot, browse menu items, learn of events, determine location, learn specials and promotions, order online food, or otherwise access the various information and services offered on Defendant's website.  As a result, Plaintiff is deterred from visiting the Defendant's locations. If www.lolas-gourmet.com were equally accessible to all, Plaintiff could browse menu items, learn of events, determine location, learn specials and promotions, order online food and perform a variety of other functions related to the goods and services offered on its website and at Defendant's locations.

40.     Through his repeated attempts to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

41.     There are readily available, well established guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to Defendant's website

accessible would not fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

42.     Because maintaining and providing a website where all functions can be performed using a keyboard, would provide full, independent and equal accessible to all consumers, to www.lolas-gourmet.com Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

     a.  Construction and maintenance of a website that are inaccessible to visually-impaired individuals, including Plaintiff and the proposed class;

     b.  Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and the proposed class; and,

     c.  Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, and the proposed class.

43.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

44.     The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

"In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities…. Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ."

(42 U.S.C. § 12188(a)(2).)

45.     Because Defendant's website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with the ADA by making the website accessible, using guidelines which would allow all functions of the website to be performed using a keyboard.  Plaintiff seeks that this permanent injunction require Defendant to cooperate with the Agreed Upon Consultant to:

a.   Train Defendant's employees and agents who develop the www.lolas-gourmet.com website on accessibility and compliance with the ADA to allow all functions of the website to be accessible to persons using screen-readers using only a keyboard;

b.   Regularly check the accessibility of Defendant's website to maintain its accessibility as required by the ADA and to allow all functions of the website to be accessible to persons using screen-readers using only a keyboard;

c.   Regularly test end-user accessibility of the website by blind or visually-impaired screen-reader users to ensure that Defendant's website is accessible to blind and visually-impaired individuals who would access the website with screen-reading technology; and

d.   Develop an accessibility policy that is clearly disclosed on its website, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendant has investigated and

19

identified the accessibility-related problem that was identified and reported to Defendant.

46.     If www.lolas-gourmet.com were fully and equally accessible, Plaintiff and similarly situated blind and visually-impaired people could independently view information and otherwise research products and services available via Defendant's website.

47.     Although Defendant may currently have centralized policies regarding the maintenance and operation of its website, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

48.     Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendant's websites in violation of their rights.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq.*
[www.lolas-gourmet.com]

49.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

50.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

51.     Lola' Gourmet restaurant location is a public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  www.lolas-gourmet.com is a service, privilege, or advantage of its stores.  www.lolas-gourmet.com is a service that is integrated with these locations.

52.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

53.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

54.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen-readers are an effective method of making visually delivered material available to consumers/individuals who are blind or are visually impaired.

56.    Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

57.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of a disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

58.    Defendant's Website has not been designed for effective communication, in that, it has not been designed to be usable by people who require screen-readers, the accessible format needed for persons who are blind and/or visually-impaired.

59.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.  Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).  Furthermore, Plaintiff has been denied full and equal access to www.lolas-gourmet.com, has not been provided services which are

provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

60.     Plaintiff intends to return to Defendant's website and physical location provided Defendant modify the website to provide equal access to Plaintiff and similarly disabled persons. But Plaintiff is precluded from doing so by Defendant's failure and refusal to provide disabled persons with full and equal access to its website.

61.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests for judgment against Defendant as follows:

A.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its website is fully accessible to, and independently usable by, blind and visually-impaired individuals;

B.     A preliminary and permanent injunction enjoining Defendant from violating the ADA, 42 U.S.C. § 12181 *et seq*., with respect to its website www.lolas-gourmet.com;

C.     A preliminary and permanent injunction requiring Defendant to evaluate and neutralize their policies, practices and procedures toward persons with

disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to the website;

D.     An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or 23(b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

E.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

F.     For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendant's discrimination;

G.     For pre-judgment interest to the extent permitted by law;

H.     For costs of suit; and

I.     For such other and further relief as this Honorable Court deems just and proper.

Dated this 19th day of July, 2018.

Respectfully submitted,

**The Advocacy Group**
*Attorney for Plaintiff*
200 S.E. 6th Street, Ste. 504
Fort Lauderdale, FL 33301
Telephone: (954) 282-1858
Service Email: service@advocacypa.com

By */s/ Jessica L. Kerr*
Jessica L. Kerr, Esq.
Fla. Bar No. 92810